Kij WILLIAMS, Appellant

v.

The STATE of Texas, Appellee

NO. 14-16-00292-CR

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed April 13, 2017.

Discretionary Review Refused August 23, 2017

Chip B. Lewis, Houston, TX, for Appellant.

Molly Wurzer, Houston, TX, for State.

Panel consists of Chief Justice Frost and Justices Brown and Jewell.

## OPINION

Kevin Jewell, Justice

Appellant Kij Williams challenges his conviction for misdemeanor driving while intoxicated ("DWI") on the grounds that the evidence is insufficient to support his conviction and the trial court reversibly erred by denying his motion to suppress the horizontal gaze nystagmus ("HGN") test results. We affirm.

## Background

At approximately 1:00 a.m. on March 14, 2014, a valet at a Houston area bar/restaurant heard a noise, turned around, and saw a vehicle attempting to parallel park. The valet saw the vehicle hit the car in front and the car behind it; both these cars were damaged by the driver of the vehicle attempting to parallel park. Appellant was driving the vehicle and had a female passenger in the car with him. Houston Police Department ("HPD") Officer Kevin Hunt was working off-duty directing traffic flow outside the restaurant. Hunt approached appellant's vehicle and asked appellant for his driver's license and insurance. Appellant refused. According to the State, appellant asked Hunt, "Can't we just make this go away?" and offered Hunt $70. Hunt asked the valet to go inside and request assistance from other off-duty officers present at the bar.

As Hunt waited by appellant's car for the other officers, appellant and his passenger became belligerent. Hunt repeatedly asked appellant to turn off the car and get out, but appellant refused. During Hunt's interactions with appellant, Hunt saw that appellant's eyes were glassy with dilated pupils; Hunt also smelled alcohol on appellant's breath and noticed that appellant's speech was slurred. Appellant told Hunt that he had had "a couple of beers." At appellant's trial, Hunt testified that, based on his observations and experience, he believed that appellant was intoxicated, most likely by drinking alcohol.

HPD Lieutenant Mark Glentzer and another officer came outside at the valet's request. Glentzer saw Hunt speaking with appellant, who was outside his vehicle and leaning against it. As Glentzer approached, appellant re-entered his car. Glentzer no-

ticed that the cars in front of and behind appellant's vehicle were damaged. Glentzer also smelled alcohol on appellant's breath, despite the fact that appellant appeared to be chewing gum during their interactions. He also asked appellant to step out of the vehicle, but appellant refused to get out of his car. Glentzer found appellant to be very slow in his movements and slow to respond to questions. Glentzer also noticed that appellant's speech was slurred and appellant did not seem to understand what the officers were telling him. Glentzer testified at appellant's trial that, based on his experience and training, he believed appellant was intoxicated and had lost the normal use of his mental and physical faculties on the night in question.

Meanwhile, Hunt called the HPD DWI unit; it took approximately twenty to thirty minutes for the DWI officer to arrive. HPD Officer Joseph Little, with the department's DWI Task Force, arrived at the restaurant around 1:30 a.m. Appellant was still behind the wheel of his vehicle when Little arrived. Little noticed an odor of alcohol on appellant's breath, even with appellant's gum-chewing. Little also noticed that appellant had glassy eyes and slurred speech. Little asked appellant to step out of the car, but appellant refused and was uncooperative. Appellant asked repeatedly for a lawyer, and Little told him that he could not have one during a DWI investigation. Appellant asked for a

blood test, but he refused to exit his vehicle. Instead, he demanded that the blood test be performed as he sat in his vehicle.

Appellant and his passenger argued with Little for about ten minutes before the officers decided to forcibly remove appellant from his vehicle. It took the officers several minutes to remove appellant from his car, during which time appellant continued to demand his attorney.[1] Little performed the HGN standard field sobriety test on appellant, and appellant displayed six out of six clues of intoxication.

Little transported appellant to the HPD "intox facility" to perform other field sobriety tests. When they arrived, Little demonstrated the walk-and-turn and the one-leg-stand tests. Appellant refused to perform both tests. However, appellant consented to a blood-alcohol test. Based on Little's observations of appellant that night, Little determined that appellant was intoxicated and had lost the normal use of his mental and physical faculties.[2]

Appellant's blood was drawn at HPD's "central blood room" at around 3:30 a.m. The analyst who tested appellant's blood testified that appellant's blood-alcohol content was .130 grams of ethanol per 100 mL of blood, above the legal limit of .08.[3] Appellant was charged by information with DWI. A jury found appellant guilty, and the trial court sentenced him to 180 days' confinement, but suspended the sentence and placed appellant on community super-

1. Glentzer testified that appellant locked his feet on the floor, pressed his back into the seat, and held onto the steering wheel. At this time, the officers requested backup. The officers also removed appellant's passenger and detained her for interfering with the DWI investigation.

2. Little opined that appellant was intoxicated while operating his vehicle based on his observations that appellant: (1) hit parked cars; (2) had a strong odor of alcohol on his breath, even though he was chewing gum; (3) had

slurred speech; (4) stated that he was going to a bar; (5) refused to get out of his vehicle, despite Little's explanation of why he should cooperate; (6) displayed six clues of intoxication on the HGN test; and (7) explained the odor of alcohol on his breach by stating that he had been kissing the woman he was with that night.

3. See Tex. Penal Code § 49.01 (defining "intoxicated" as, relevantly, having an alcohol concentration of 0.08 or more).

vision for one year. The trial court certified appellant's right to appeal, and this appeal timely followed.

## Sufficiency

In his first issue, appellant challenges the sufficiency of the evidence to support his conviction.

 *Standard of Review.* Reviewing courts apply a legal-sufficiency standard in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). Under this standard, we examine all the evidence adduced at trial in the light most favorable to the verdict to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Temple*, 390 S.W.3d at 360; *Criff v. State*, 438 S.W.3d 134, 136-37 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). Our review of "all of the evidence" includes evidence that was admitted properly and improperly. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Navarro v. State*, 469 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

 This standard applies to both direct and circumstantial evidence. *Criff*, 438 S.W.3d at 137. Accordingly, we will uphold the jury's verdict unless a rational fact finder must have had a reasonable doubt as to any essential element. *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009); *West v. State*, 406 S.W.3d 748, 756 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

 *Governing Law.* The Texas Penal Code provides: "A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code § 49.04(a). "Intoxication" has two alternative meanings. *Navarro v. State*, 469 S.W.3d 687, 694 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Under the per se intoxication theory, a person is intoxicated if the person has an alcohol concentration of 0.08 or more. *Id.*; Tex. Penal Code § 49.01(2). Under the impaired theory, a person is intoxicated if the person does not have the normal use of mental or physical faculties by reason of the introduction of alcohol into the body. *Navarro*, 469 S.W.3d at 694; Tex. Penal Code § 49.01(2). These two methods of proof are not mutually exclusive, and evidence offered under the per se theory can support a finding under the impaired theory. *See Navarro*, 469 S.W.3d at 694 (citing *Crenshaw v. State*, 378 S.W.3d 460, 467 (Tex. Crim. App. 2012)); *see also Stewart v. State*, 129 S.W.3d 93, 97 (Tex. Crim. App. 2004).

 *Application.* With this framework in mind, we turn to the evidence in this case. Based on the following record evidence, the jury rationally could have found that appellant was driving while intoxicated.

- Appellant hit two parked cars as he attempted to parallel park his vehicle outside a bar at around 1:00 a.m. *See Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010) (explaining that a one-car collision with an inanimate object is some circumstantial evidence of intoxication).

- Appellant refused to cooperate with the officer (Hunt) and instead offered him $70 to "make it go away." *See Wingate v. State*, 365 S.W.2d 169, 170 (Tex. Crim. App. 1963) (considering evidence that appellant offered officers a bribe in DWI sufficiency analysis).

- Appellant behaved belligerently, had glassy eyes and dilated pupils, had a

strong odor of alcohol on his breath, and slurred his speech. *See Jackson v. State*, 468 S.W.3d 189, 192-93 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (noting that this type of evidence may raise an inference of intoxication).

- Three officers who interacted with appellant at the time of his arrest testified that they believed appellant was intoxicated based on their observations and their experience. *See id.* (citing *Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979) and *Henderson v. State*, 29 S.W.3d 616, 622 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) for proposition that testimony of police officer that individual is intoxicated is probative evidence of intoxication).
- Appellant displayed six out of the six signs of intoxication that the HGN test detects. *See Perez v. State*, 495 S.W.3d 374, 382-83 (Tex. App.—Houston [14th Dist.] 2016, no pet.).
- Appellant's blood-test results revealed a blood-alcohol concentration of 0.13 g/mL. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (stating that blood-alcohol content test results are "highly probative" of both impairment and per se intoxication).

Appellant cites several factors as purportedly negating the finding that he was intoxicated. First, he contends that his involvement in a fender-bender is no evidence of intoxication because Officer Hunt admitted that these type of accidents happen often when people at that location are parallel parking. But, to the contrary, Hunt testified that it was "very rare" to have fender-benders at this location. Appellant also discounts the HGN test evidence because he asserts it was an improperly performed test on "a subject with a prior head injury." We discuss the propriety of the HGN test in our analysis of the next issue, but regardless whether that evidence was rightly or wrongly admitted, under the applicable standard, we consider it in our sufficiency review. *See Navarro*, 469 S.W.3d at 693 (noting that reviewing court is to consider even improperly admitted evidence in determining sufficiency of the evidence). Appellant downplays the officers' testimony concerning the smell of alcohol by contending it came from the car, rather than appellant's person. But, this spin on the evidence ignores the officers' statements that they smelled the alcohol on appellant's breath.

■■■■■■ Appellant also attacks the blood-test evidence by urging that the jury "could have easily disregarded the blood test evidence as unreliable" because the test was performed after the expiration date for the vacuum on the blood tube and the blood had been stored in the lab's malfunctioning refrigerator unit. But the blood analyst provided an explanation for the circumstances surrounding both the container and the refrigeration issue. The analyst explained that because the blood was collected before the expiration date on the vacuum tube, the expiry date had no impact on the test results. Second, the analyst explained that the temperature in the refrigerating unit dropped below freezing, which would not have impacted the blood-test results. Finally, appellant points to his having "stood perfectly still and erect for an extended time on the video tape made at the station," a fact he claims was not consistent with intoxication. But, the jury, not a reviewing court, resolves conflicts in testimony and weighs the evidence. *See Murray v. State*, 457 S.W.3d 446, 448-49 (Tex. Crim. App. 2015). We presume that that the jury resolved any inconsistencies in the evidence in favor of the verdict. *See id.*

In short, appellant would have this court use a "divide and conquer" approach to discount the sufficiency of the evidence, but such an approach is not appropriate in a legal sufficiency review because it fails to consider "the cumulative force of all the evidence." *Id.* We defer to the jury to weigh appellant's points against the evidence (cited above) that supports the finding that appellant was intoxicated. *See Jackson,* 468 S.W.3d at 194.

Considering the cumulative force of all the evidence viewed in the light most favorable to the State, we conclude that a rational juror could have found beyond a reasonable doubt that appellant was intoxicated under the impairment theory of intoxication. *See Murray,* 457 S.W.3d at 449-50.

We overrule appellant's first issue.

### Motion to Suppress

In his second issue, appellant contends that the trial court erred in denying his motion to suppress and admitting evidence of the HGN test. Specifically, he asserts that the trial court should not have admitted evidence of the HGN test because Officer Little failed to ask him certain qualification questions before administering the test.

*Standard of Review.* We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Wade v. State,* 422 S.W.3d 661, 666 (Tex. Crim. App. 2013); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The trial court is the sole finder of fact and is free to believe or disbelieve any or all of the evidence presented at a suppression hearing. *Wiede v.*

*State,* 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts that depend on credibility and demeanor. *Baird v. State,* 398 S.W.3d 220, 226 (Tex. Crim. App. 2013).

By contrast, we review de novo the court's application of the law to the facts, because resolution of those ultimate questions does not turn on the evaluation of credibility and demeanor. *See Guzman,* 955 S.W.2d at 89. We view the evidence on a motion to suppress in the light most favorable to the trial court's ruling. *Wiede,* 214 S.W.3d at 24. Whether we infer fact findings or consider express findings, we uphold the trial court's ruling under any applicable theory of law supported by the facts of the case. *Alford v. State,* 400 S.W.3d 924, 929 (Tex. Crim. App. 2013).

*HGN Testing.* "Nystagmus is an involuntary rapid oscillation of the eyes in a horizontal, vertical, or rotary direction." *Plouff v. State,* 192 S.W.3d 213, 218 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (op. on reh'g). Horizontal gaze nystagmus, or HGN, refers to the inability of the eyes to smoothly follow an object moving horizontally across the field of vision, particularly when the object is held at a forty-five degree (or more) angle to the side. *Id.* Consumption of alcohol exaggerates nystagmus to the degree that it can be observed by the naked eye. *Emerson v. State,* 880 S.W.2d 759, 766 (Tex. Crim. App. 1994).

Testimony concerning an HGN test is scientific evidence subject to the requirements of *Kelly v. State.*[4] *Emerson,* 880 S.W.2d at 763. In *Emerson,* the Court

---

4. *Kelly v. State,* 824 S.W.2d 568 (Tex. Crim. App. 1992). In *Kelly,* the Court of Criminal Appeals held that, for scientific evidence to be considered reliable and admissible, the proponent must establish that (1) the underlying scientific theory is valid, (2) the technique applying the theory is valid; and (3) the technique was properly applied on the occasion in question. *Id.* at 573.

of Criminal Appeals examined the underlying scientific theory of HGN testing and determined that the science is valid. *Id.* The *Emerson* court also determined that the HGN testing technique in the National Highway Traffic Safety Administration ("NHTSA") manual is valid. *Id.* at 768-69. The HGN technique is applied properly when an officer follows the standardized procedures outlined in the Driving While Intoxicated Detection Manual published by NHTSA. *Id.*; *see also Kelly*, 824 S.W.2d at 573 (explaining that, for proffered evidence to be admissible as scientific evidence, the proponent must establish that the technique was properly applied on the occasion in question). "Slight variations in the administration of the HGN test do not render the evidence inadmissible or unreliable, but may affect the weight to be given the testimony." *Plouff*, 192 S.W.3d at 219 (citing *Compton v. State*, 120 S.W.3d 375, 378 (Tex. App.—Texarkana 2003, pet. ref'd)).

*Analysis.* Appellant's only challenge to the HGN test is that Officer Little failed to ask him if he had any recent head injuries or whether he was wearing glasses.[5] In other words, appellant contends that the State did not meet the third requirement of *Kelly* because the State did not prove the test was administered properly on the occasion in question. *See Kelly*, 824 S.W.2d at 573.

The NHTSA testing procedures "require an officer to screen for factors other than alcohol that potentially contribute to, or cause, nystagmus, such as other drugs, neurological disorders, and brain damage, prior to administering the HGN test." *Emerson*, 880 S.W.2d at 768. But, screening for potential causes of nystagmus, other than alcohol ingestion, can be performed while conducting the HGN test, consistent with the NHTSA manual. *Webster v. State*, 26 S.W.3d 717, 721-22 (Tex. App.—Waco 2000, pet. ref'd); *see also Quinney v. State*, 99 S.W.3d 853, 858 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

According to Little, he starts all HGN testing by checking for equal pupil size and equal tracking. *See Webster*, 26 S.W.3d at 722-23. Little stated, "If they've got equal pupil size and equal tracking, that makes them a candidate for the test." *See id.* Specifically as to appellant, Little explained that he checked appellant's pupil size and tracking, saw that appellant's eyes tracked equally and that appellant's pupils were equal in size, and determined that appellant was a good candidate for the HGN test. *See id.* Thus, Little appropriately screened appellant before performing the HGN test, and appellant's issue lacks merit.[6] *See id.*

Appellant, however, asserts that his testimony regarding a head injury he sustained in 2003 or 2004 that resulted in him being in a coma for over two weeks invalidated the HGN test results. But appellant did not establish that his purported head injury was of such a degree or nature that it would have impacted the validity of the HGN testing. The trial court was not required to believe appellant's testimony; the trial court was the sole judge of the credi-

---

5. Officer Little was trained according to the standards in the NHTSA manual, was certified to perform the HGN test, and relied on that training and manual in administering the HGN test to appellant. Appellant has not challenged Little's qualifications.

6. "The only true pre-test screening required is for the officer to inquire whether the suspect is wearing contact lenses." *Webster*, 26 S.W.3d at 723. Although appellant complains that Little failed to ask if he was wearing glasses, he does not contend that Little failed to check to see if he was wearing contact lenses. *See id.*

bility of the witnesses at the suppression hearing. *See Baird*, 398 S.W.3d at 227-28. Instead, the trial court was entitled to credit Little's testimony that appellant was a good candidate for the HGN test over appellant's testimony. *See id.* at 226-28 (explaining that the trial court is the "sole arbiter" of factual/credibility disputes).

Under these circumstances, we cannot say that the trial court abused its discretion in admitting the results of the HGN test. For the foregoing reasons, appellant's second issue is overruled.

## Conclusion

The evidence is legally sufficient to support appellant's conviction for DWI. Further, the trial court did not abuse its discretion in admitting appellant's HGN test results. We affirm the trial court's judgment.