**Affirmed and Memorandum Opinion filed August 15, 2019**



In The

# Fourteenth Court of Appeals

___

### NO. 14-18-00046-CR

___

### LINZALE DORSETTE GREER, Appellant

### V.

### THE STATE OF TEXAS, Appellee

___

### On Appeal from the 122nd District Court
### Galveston County, Texas
### Trial Court Cause No. 09CR3730

___

## MEMORANDUM OPINION

Appellant Linzale Dorsette Greer appeals his conviction for aggravated kidnapping. In his sole issue he challenges the legal sufficiency of the evidence to prove his identity as one of the kidnappers. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The complainant Deisy Delgado testified at trial that her abduction began in the parking lot of a Houston Dollar Store and ended with her escape in the parking lot of a La Marque Wal-Mart. She gave a detailed account of what happened but admitted

that she could not see one of her abductors.

On the night of the kidnapping, shortly after the complainant escaped from the trunk of her car, she took refuge in the back of a Good Samaritan's car at the La Marque Wal-Mart. The Good Samaritan summoned help with a 911 call. When the complainant spoke with the police, she identified appellant and Jamichael Cruse as her kidnappers.

Appellant was charged with aggravated kidnapping both as a principal and as a party. The jury found appellant guilty as charged. The trial court entered judgment on the verdict and sentenced appellant to thirty years' confinement.

## II. SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

In evaluating a challenge to the sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The jury "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The jury may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the jury resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff*

2

*v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

## B. Analysis

The indictment alleged that on December 14, 2009, "appellant intentionally or knowingly abduct[ed] Delgado by restricting her movements . . . without her consent so as to interfere substantially with her liberty, by moving her from one place to another, with the intent to prevent her liberation, by secreting or holding her in a place where she was not likely to be found, and the defendant did then and there use or exhibit a deadly weapon."

A person commits an aggravated kidnapping if the person intentionally or knowingly "abducts" another person and uses or exhibits a deadly weapon during the commission of the offense. *See* Tex. Penal Code § 20.04(b). "Abduct" has its own statutory definition, meaning "to restrain a person with intent to prevent [the person's] liberation by . . . holding [the person] in a place where [the person] is not likely to be found; or using or threatening to use deadly force." *Id.* § 20.01(2). Under the statute, "restrain" means "to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." *Id.* § 20.01(1). The trial court's instructions tracked the indictment in the disjunctive, and the instructions were consistent with the language for an aggravated-kidnapping offense under the Penal Code.

The trial court also instructed the jury on the law of parties under Penal Code section 7.02(a)(2). *See* Tex. Penal Code § 7.02. Under section 7.02, "[a] person is criminally responsible for an offense committed by the conduct of another if: . . . (2) acting with intent to promote or assist the commission of the offense, [the person] solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2). Thus, even if the jury failed to find appellant guilty as a

3

principal, if it found the evidence showed that Cruse was guilty of the aggravated-kidnapping offense and that appellant intentionally promoted, assisted, encouraged, directed, or aided Cruse in the kidnapping, then the jury was authorized to find appellant guilty under the same charge.

As with every other element of an offense, the State must prove beyond a reasonable doubt the accused's identity as the person who committed the charged offense. *Miller v. State*, 667 S.W.2d 773, 775 (Tex. Crim. App. 1984). A defendant's identity and criminal culpability may be proved by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Bin Fang v. State*, 544 S.W.3d 923, 928 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Because appellant challenges only the sufficiency of the evidence to prove his identity as one of complainant's kidnappers, we focus our analysis on the evidence linking him to the crime.

All three occupants of the car testified at trial. The complainant, appellant, and Cruse each gave an account of the events on the night of the complainant's abduction.

*The Complainant's Account*

The complainant testified that after she left the Dollar Store and got back into her car, a young looking man dressed in black wearing a black cap tried to sell her a cell phone. She stated that as they were talking, she felt someone behind her press a gun to her side, and that the man with the gun told her to get in the back seat. The man with the gun then followed her into the back seat. When the men asked for her keys, she gave them her keys and everything else she had. The young man started driving the car and then stopped shortly thereafter. The men tied her arms and legs and put her in the trunk of her car. While in the trunk she could hear the two talking but had trouble discerning what they were saying due to loud music. The complainant recounted two stops, one at an ATM and one at a gas station, where she

4

could hear someone trying to open the car's gas cap. She did not remember any other people or any other stops (until the final stop), but she recalled that at some point something heavy was put in the trunk with her. She testified that at the final stop one of the men opened the trunk and told her they would be back. She took the opportunity to untie her hands and ankles, slip a hand between the seats, and pull the release cord to drop the seats and escape.

### Cruse's Account

Cruse testified at trial that he had pled "guilty" to the complainant's aggravated kidnapping. He admitted to trying to sell the complainant a phone. He denied that he had confessed to kidnapping. He did not remember a gun, or being with appellant. The prosecutor impeached Cruse's testimony using two prior statements that Cruse had given to the police. In both statements, Cruse claimed that appellant approached the complainant and him with a gun.

### Appellant's Account

Appellant testified that he had known Cruse for a month or two before the incident, and that Cruse was his "hype man" at rap shows. Appellant testified that he and Cruse had been together earlier in the evening, and took part in an altercation with the complainant and her boyfriend, who was appellant's childhood foe. Appellant testified to batting away a gun he claimed the complainant was holding and fleeing alone to his music studio. According to appellant, Cruse picked him up in the complainant's Ford Focus automobile about an hour after the skirmish. Appellant said that the music was blasting and that another unknown person was in the car. Appellant did not know the person's name but described the individual as a slim male around 5 foot 11 inches tall. Appellant testified that they stopped at the gas station to get money, stopped at appellant's house to drop off CDs, and then dropped off the unknown person at his house "toward Trinity Garden." They then went to the Wal-Mart.

5

*Other Identification Evidence*

Appellant complains of the State's failure to make either an in-court identification, "direct" out-of-court identification, or voice identification of appellant. An in-court identification is not necessary where other evidence is presented establishing the culpability of the accused. *See Conyers v. State*, 864 S.W.2d 739, 740 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). Even though the complainant was not asked to identify appellant in the courtroom, the State presented other evidence of identification. One of the investigating officers called to the Wal-Mart found the complainant scared, in a fetal position, in the backseat of the 911 caller's vehicle and testified that the complainant identified appellant and Cruse as they approached in the parking lot.

In identifying both appellant and Cruse from across the parking lot, the complainant looked twice, positively identified them twice, and on the second time, she stated "I'm positive that's them." The complainant was not asked to make an in-court identification of appellant at trial, but consistent with the responding officer's testimony, she agreed that immediately after her escape she identified two individuals that the police stopped in the parking lot based on descriptions she had given them.

The police found the complainant's keys in Cruse's pocket during a pat-down for a gun. The police officer identified appellant in the courtroom and described his appearance at Wal-Mart on the date of his investigation. According to the officer, appellant was wearing "a dark in color sweatshirt with a hood, with a hoodie, and some kind of white emblem." The jury also saw video surveillance footage of the Wal-Mart parking lot on the day of the incident, which showed Cruse and appellant together.

Appellant cites to *Bickens v. State* for the proposition that an uncertain in-court identification would have constituted insufficient evidence standing alone. 708

S.W.2d 541, 543 (Tex. App.—Dallas 1986, no pet.). In *Bickens*, the Fifth Court of Appeals affirmed the defendant's conviction, holding that the witness's "positive identification of appellant from a photographic lineup on the date of the offense and the circumstantial evidence placing appellant in the area and wearing similar clothing" as he was described to have worn as sufficient additional support. *Id.* Appellant also cites *Ates v. State*, in which the Twelfth Court of Appeals held evidence insufficient when the witness could only guess that the defendant was the perpetrator of the crime. *See Ates v. State*, 644 S.W.2d 843, 844 (Tex. App.—Tyler 1982, no pet.). Unlike *Ates*, today's case does not involve any uncertainty or guess at identification. That the complainant was not asked to make an in-court identification and testified that she did not see appellant does not amount to a guess that appellant was the man with the gun. She recalled her out-of-court identification on the day of the kidnapping without discrediting or withdrawing it. As in *Bickens*, the evidence included a positive out-of-court identification as well as other circumstantial evidence placing appellant in the area, wearing clothing similar to the clothing reportedly worn by the perpetrator.

Appellant also complains about the lack of fingerprints found in the vehicle or DNA evidence to support his identification. Texas law does not require such evidence to support a criminal conviction. *Pena v. State*, 441 S.W.3d 635, 641 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Furthermore, the jury heard testimony about the physical evidence collected and the results of the DNA analysis, which showed the following:

- Appellant and Cruse both were excluded as possible contributors to DNA taken from a cloth tied in a knot found in the trunk of the complainant's car. The complainant and an unknown male's DNA could not be excluded.

- Appellant and the complainant were not excluded as possible contributors to DNA taken from *a gun* the complainant's

mechanic discovered on the engine block of the complainant's car a month after the kidnapping.

- Appellant, the complainant, and Cruse could not be excluded as DNA contributors of samples taken from a dark sweater tied up into a knot found in the trunk of the complainant's car, the stocking cap found in the car, or a bottle of water found in the complainant's car.

In sum, while appellant's DNA was not found on some items, the DNA evidence recovered from the car and the gun generally supported the complainant's version of events that link appellant as the gun-wielder at the Dollar Store. This evidence permits a reasonable inference that appellant was involved in binding the complainant and that he was tied to other items found in the complainant's car.[1]

Through his account appellant attempted to provide an alibi at the time of the complainant's abduction, a basis for reconciling his DNA not being excluded from the gun. The jury, not a reviewing court, resolves conflicts in testimony and weighs the evidence. *See Murray v. State*, 457 S.W.3d 446, 448-49 (Tex. Crim. App. 2015). We presume that that the jury resolved any inconsistencies in the evidence in favor of the verdict. *See id.* The jury was free to find the complainant was the more credible witness and to believe her testimony that at the time in question, she neither dated nor knew anyone by the name or nickname "Jarone," and so infer that appellant's and the complaintant's DNA were not excluded from the gun because appellant held the complainant up using the gun and pressed it against her body. Although the State has the burden to prove each element of the offense beyond a reasonable doubt, it need not exclude every conceivable alternative to a defendant's guilt. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993) (explaining that "the evidence is not rendered insufficient simply because appellant presented a different version of the events");

---

[1] The forensic scientist with the DNA section of the crime lab testified that DNA can be transferred by a person to an object by touching, and that the object may transfer that DNA to another object. She testified that the heat on the vehicle's engine could have affected the DNA on the revolver, but she was not questioned as to how it would have affected the DNA.

*Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012).

The combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict supports any inference made to identify appellant as the complainant's kidnapper. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). First, one police officer testified that appellant incorrectly identified himself when he was first questioned at Wal-Mart. The investigating officers testified that Cruse and appellant told them that they had come from Hitchcock, but were unable to give an address. The complainant testified that she received a letter in the mail purporting to be from Cruse. Early in the letter, the writer states "This is Jamicael," misspelling Cruse's first name. The letter-writer apologizes for the kidnapping and expresses remorse for lying to the police that appellant was involved in the kidnapping. The letter states that "the person that did it was John Carter," and "[appellant] had nothing to do wit[h] this because I had picked him up afterwards." The complainant gave the letter to the police and it was processed for fingerprints. A Galveston Police Department fingerprint analyst testified that Cruse's fingerprints were not found on the letter and that appellant's right thumbprint was present on the letter. Cruse testified that he did not write the letter and pointed out that his first name was misspelled in the letter.

Appellant admitted that he mailed the letter to the complainant, but he testified that another inmate gave him the letter and that he did not write it. Both appellant's act of giving the police a false name and the letter he sent to the complainant tend to show consciousness of guilt. *See State v. Cruz*, 461 S.W.3d 531, 539 (Tex. Crim. App. 2015) (noting that providing a false name to police is evidence of a consciousness of guilt); *See Johnson v. State*, 583 S.W.2d 399, 409 (Tex. Crim. App. 1979) ("[a]ttempts by a party to suppress or fabricate evidence are admissible against the accused.").

Additionally, the complainant's testimony that there was no third person and

9

appellant's concession that he was with Cruse in the complainant's car while the complainant was in the car's trunk, provide evidence of appellant's opportunity to commit the crime and could be considered with all of the other evidence in support of the jury's verdict. *See Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012) (considering evidence of opportunity to support the combined and cumulative force of the evidence and to view the evidence in the light most favorable to the jury's guilty verdict).

Although appellant challenges only the evidence relating to the proof of his identity as one of the kidnappers, we conclude, based on our review of the record, that legally sufficient evidence supports all the elements of the aggravated-kidnapping offense.

## III. CONCLUSION

Under the applicable standard of review, the evidence is legally sufficient to support appellant's aggravated-kidnapping conviction. *Pena v. State*, 441 S.W.3d 635, 641 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *See Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); *Williams v. State*, 525 S.W.3d 316, 322 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). So, we overrule the appellant's sole issue and affirm the trial court's judgment.

/s/     Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Jewell and Bourliot.

Do not publish — TEX. R. APP. P. 47.2(b).