**Affirmed and Memorandum Majority and Concurring Opinions filed June 29, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00980-CR
### NO. 14-19-00981-CR

## CHARLES BERNARD BAXTER JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 179th District Court
### Harris County, Texas
### Trial Court Cause Nos. 1487829 & 1487830

## MEMORANDUM MAJORITY OPINION

A jury found appellant guilty of intoxication manslaughter and possession of a controlled substance, i.e., methamphetamine, weighing less than a gram. Appellant contends that the evidence is legally insufficient to support each conviction and that the State's closing argument was fundamental error. We affirm.

# I.   SUFFICIENCY OF THE EVIDENCE

In the intoxication manslaughter case, appellant contends that the evidence is legally insufficient because no rational jury could find beyond a reasonable doubt that appellant was intoxicated when he struck the decedent with his car.  In the possession case, appellant contends that the evidence is legally insufficient because no rational jury could find beyond a reasonable doubt that he knew he was possessing a controlled substance.

## A.   Standard of Review

When reviewing the sufficiency of the evidence, we consider all of the admitted evidence in the light most favorable to the verdict to determine whether a rational jury could find the essential elements of the offense beyond a reasonable doubt.  *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020).  The jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony.  *Id.*  Juries can draw any reasonable inference from the facts so long as each inference is supported by the evidence.  *Id.*

## B.   Intoxication Manslaughter

As alleged in the intoxication manslaughter case, the State had to prove, among other things, that appellant was intoxicated by (1) not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body; or (2) having an alcohol concentration of 0.08 grams per 100 milliliters of blood.  *See* Tex. Penal Code §§ 49.01(1)–(2), 49.08(a).  Respectively, these are the "impairment" and "per se" theories of intoxication.  *See Navarro v. State*, 469 S.W.3d 687, 694 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).  Appellant challenges the evidence to support both theories, but we will affirm if there is sufficient evidence of either.  *See id.* at 695.  Because there is sufficient evidence

2

to support the per se theory, we focus our review of the evidence and analysis on the per se theory.

### 1. Evidence

The decedent was a passenger in his brother's truck when they got a flat tire on Highway 59 near Humble. They parked in an emergency lane between the main lanes and an exit ramp. Shortly after they changed the tire at about 4:40 a.m., appellant veered across all of the main lanes and hit the truck and the decedent, killing him. At the time of impact, appellant was traveling at 59 miles per hour. He didn't brake.

Appellant testified that he fell asleep at the wheel. On the night of the crash, he attended a bachelor party at a strip club that was a "BYOB" event. He brought a bottle of Paul Masson brandy and consumed three drinks over the course of three hours with his last drink at about 1:00 a.m. He acknowledged that when he was at the hospital following the crash, he told a police officer he drank "too much."

The officer who interviewed appellant at the hospital testified similarly that appellant reported drinking "a lot or too much." But appellant also told the officer that he drank only two or three drinks, which the officer thought was inconsistent with "a lot." An emergency room nurse testified that appellant told her he drank "[m]aybe about a six-pack." Another police officer who found a Paul Masson bottle in appellant's car testified that it did not look like only three minor drinks had been taken out of the bottle. An officer testified that appellant said he left the strip club at about 2:00 a.m., but the officer could not recall the time appellant reported to have had his last drink.

A toxicologist employed at the Harris County Institute of Forensic Sciences (HCIFS) testified that appellant's medical records indicated his blood was

3

collected at the hospital at 5:50 a.m. on the morning of the crash and tested for alcohol, which resulted in 0.149 grams per 100 milliliters. A police officer obtained another blood draw at 7:40 a.m. A toxicologist at the HCIFS tested the sample four years later with a result of .089 grams per 100 milliliters.

Another toxicologist testified about retrograde extrapolation based on the HCIFS test result, estimating that appellant's blood alcohol concentration at the time of the crash would have been about 0.141 grams per 100 milliliters. She testified that "in order to do these extrapolations, we need to know the time of the last drink in relation to the time of the crash." But, she clarified that the retrograde extrapolation calculation would be unaffected by whether appellant had his last drink at 12:00 a.m. or 2:00 a.m. because the calculation requires that the last drink before the crash be consumed two hours or more before crash. She testified that the alcohol concentration of blood may decrease over time while it is in storage, or it may stay the same.

## 2. Analysis

Appellant contends that there is a reasonable doubt regarding the alcohol concentration of his blood at the time of the crash because (1) the HCIFS test was performed four years after the crash; (2) an officer could not recall at what time appellant said he had his last drink, and the toxicologist testified that she needed to know the time of the last drink; and (3) the record is "unclear" about whether the toxicologist performed retrograde extrapolation based on the 5:50 a.m. or 7:40 a.m. blood draw.

Appellant's specific complaints do not undermine the sufficiency of the evidence. A toxicologist testified that if there would be any effect from the four-year delay in testing of appellant's blood, the result would be lower than if it had been tested closer in time to blood draw. She did not testify that long-term storage

could cause the alcohol concentration to be higher than if the blood were tested at the time of the blood draw. And, the HCIFS test result was still above the legal limit of 0.08 grams per 100 milliliters when it was tested four years after the blood draw. Although a toxicologist initially testified that she needed to know the time of appellant's last drink to perform retrograde extrapolation, she clarified that she could perform the calculation as long as the last drink was more than two hours before the crash, and it would not matter if appellant's last drink was consumed at 12:00 a.m. or 2:00 a.m. Moreover, the record clearly demonstrates that the toxicologist performed the retrograde extrapolation based on the 7:40 a.m. blood draw, which was the blood tested by HCFIS.

Appellant relies on *Kirsch v. State*, a case addressing the sufficiency of the evidence to support a jury charge on per se intoxication. *See* 306 S.W.3d 738, 743–46 (Tex. Crim. App. 2010). The Court of Criminal Appeals reasoned that evidence is sufficient to charge the jury on per se intoxication if the record includes "either (1) expert testimony of retrograde extrapolation, or (2) other evidence of intoxication that would support an inference that the defendant was intoxicated at the time of driving as well as at the time of taking the test." *Id.* at 745–46. Such "other evidence" may include "admissions by the defendant concerning what, when, and how much he had been drinking." *Id.* at 745.

Here, the record includes evidence of retrograde extrapolation coupled with appellant's admissions that he had been drinking "too much," that he drank "[m]aybe about a six-pack," and that he stopped drinking more than two hours before the crash. Yet, his blood draw an hour after the crash tested above the legal limit for per se intoxication, and his blood draw three hours after the crash also tested above the legal limit. The retrograde extrapolation analysis of the second blood draw was consistent with the result from the hospital's independent test.

5

Appellant's challenge to the sufficiency of the evidence to support the jury's finding of guilt based on a per se theory of intoxication is an inappropriate "divide and conquer" approach. *See Williams v. State*, 525 S.W.3d 316, 322–23 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (sufficient evidence of intoxication despite challenges to the blood testing). Considering all of the admitted evidence in the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that appellant was intoxicated. *See Garcia v. State*, 112 S.W.3d 839, 853–54 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (sufficient evidence of intoxication when one expert testified that the defendant's blood alcohol concentration was 0.110 at the time of the blood draw two hours after the accident, although another retrograde extrapolation expert testified that the number could have been only 0.050 at the time of the accident).

## C.    Possession of Controlled Substance

As alleged in the possession case, the State had to prove that appellant knowingly possessed methamphetamine weighing less than one gram. *See* Tex. Health & Safety Code §§ 481.102(6), 481.115(a)–(b). To prove the requisite intent to possess, the State had to show that appellant (1) exercised control, management, or care over the substance and (2) knew that the substance was contraband. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). A jury may infer a defendant's intent or knowledge from his acts, words, or conduct. *See Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

### 1. Evidence

Appellant was the registered owner of the car that he was driving when he hit the decedent. Appellant was the only person in the car at the time of the crash. After the crash, a police officer inventoried the car. The officer testified that he found a round pink pill inside a "cubbyhole, in the center console of the vehicle to

6

the right of the driver's seat." According to the officer, the pill itself "looked like a street drug or narcotic." The pill had an "Android robot logo" on it. The officer found two additional pills in a baggie that had been stuffed inside the holster of a handgun. The officer found the holster inside the dash of appellant's car, behind the glove box. The officer explained:

Q. And where did you find it?

A. It was a compartment in the glove box to where if you're not familiar but if you open the glove box of the car, it stops at a certain point and if you—just because of what I do, if you're trying to find something illegal, if you push in the stoppers, the glove box will drop all the way down, which allows you to look into the dash compartment. And this is where this holster was kind of sitting. I guess whatever plastic structure is behind the glove box, it was sitting there and it just looked out of place.

Q. So you found these two pills inside of a holster inside of a hidden compartment?

A. Yes.

An analyst tested one of the pills and determined it to be methamphetamine.

Appellant testified that he did not remember a pill being in the center console of his car. But, he admitted to placing the other two pills in his gun holster and the glove compartment. He testified that one of his friends left the baggie of pills in the car, and appellant planned to return it to his friend later in the week. He testified that he did not know what type of pills they were.

### 2. Analysis

Appellant contends that no jury could have found beyond a reasonable doubt that he possessed a controlled substance because "the record reflects that the appellant did not know what the substance was." He also notes that his car did not smell like contraband, there was not a large amount of cash in the car, appellant did

7

not attempt to flee (because he was transported to a hospital and then jail), he made no incriminating statements when arrested, and he consented to a blood draw.

Appellant appears to rely on the absence of evidence related to several "affirmative links" that courts may consider when the defendant is not in exclusive possession of the contraband or the place where the contraband is found. *See, e.g.*, *Blackman v. State*, 350 S.W.3d 588, 594–95 (Tex. Crim. App. 2011). But here, appellant was in exclusive possession of the car where one pill was in plain view next to him, and he admitted to putting the baggie of pills in his gun holster. Thus, appellant was linked to the pills sufficient to prove that he exercised control, management, or care over the pills. *See id.* at 594 (noting that the purpose of the "affirmative links" rule is to protect an innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs); *Grant v. State*, 989 S.W.2d 428, 433 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ("Because appellant was the driver and sole occupant of the vehicle, the first element of the offense of possession is satisfied."); *see also Alvarado v. State*, No. 11-10-00262-CR, 2012 WL 3133792, at *2 (Tex. App.—Eastland July 26, 2012, no pet.) (mem. op., not designated for publication) ("When a defendant has exclusive possession of the place where a controlled substance is found, her knowledge of and control over the substance may be inferred."); *Williams v. State*, No. 03-08-00684-CR, 2010 WL 2788819, at *3 (Tex. App.—Austin July 14, 2010, no pet.) (mem. op., not designated for publication) (same).

The jury could have credited the officer's testimony that one of the pills was found in plain view near the driver's seat and looked like a street drug or narcotic, observed the "Android robot logo" on the pill, credited appellant's testimony that he placed the baggie of pills in his gun holster, credited the officer's testimony that the pills had been hidden in the dash of the car behind the glove compartment, and

rejected appellant's testimony that he did not know what the pills were made of. *See Cantu v. State*, 604 S.W.3d 590, 593 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) ("A factfinder may accept one version of the facts and reject another, and the factfinder may accept or reject any part of a witness's testimony.").

A defendant's attempt to hide or conceal evidence is conduct that may be construed as evidence of a consciousness of guilt. *See Hammock v. State*, PD-0636-19, 2021 WL 2009583, at *6 n.33 (Tex. Crim. App. May 19, 2021) (citing *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004)). "A consciousness of guilt is perhaps one of the strongest kinds of evidence of guilt." *Harris v. State*, 645 S.W.2d 447, 456 (Tex. Crim. App. 1983) (quotation omitted); *accord Harmel v. State*, 597 S.W.3d 943, 955 (Tex. App.—Austin 2020, no pet.). Thus, appellant's admission of placing the baggie of pills in the gun holster and the glove compartment, coupled with the officer's testimony that the holster had been secreted away in the dash of the car in such a way that he had to "push in the stoppers" to make the glove compartment fully drop down, is strong evidence that appellant knew the pills were contraband. *See Britton v. State*, 793 S.W.2d 768, 770 (Tex. App.—Fort Worth 1990, pet. ref'd) (sufficient evidence when the defendant stuffed the bag of contraband behind the glove compartment); *see also Grant*, 989 S.W.2d at 433 ("The second element, knowledge of the presence of contraband, may be inferred from control over the vehicle in which the contraband is concealed.")

Considering all of the admitted evidence in the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that appellant exercised control, management, or care over the substance and that he knew the substance was contraband.

## II.   JURY ARGUMENT

Appellant contends that the State misstated the law regarding the possession case during closing argument, amounting to "fundamental error which no objection could have cured." The State said:

> You got the charge. It's just care, custody, and control of the meth. He told you he knew the other pills were in his car but not the one sitting right there in the center console. I think he showed on the stand that he's a liar. So you can decide whether or not you believe that he didn't see the pill sitting right next to him.

Appellant did not object.

"The right to a trial untainted by improper jury argument is forfeitable." *Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018) (citing *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996)). "Even an inflammatory jury argument is forfeited if the defendant does not pursue his objection to an adverse ruling." *Id.* And even if the error was such that it could not be cured by an instruction, appellant was required to object to preserve error. *See Mathis v. State*, 67 S.W.3d 918, 927 (Tex. Crim. App. 2002).

Appellant's reliance on the plurality opinion in *Blue v. State* is misplaced because that case, and subsequent cases that did not require preservation of error, involved comments by the judge rather than arguments by the State. *See* 41 S.W.3d 129, 132 (Tex. Crim. App. 2000) (plurality op.) (judge's comments imparted information that tainted presumption of innocence); *see also Proenza v. State*, 541 S.W.3d 786, 797–801 (Tex. Crim. App. 2017) (error based on judge's improper comment is not forfeited by inaction at trial).

Appellant did not preserve error for a complaint that was forfeitable, so we may not reverse on this basis. *See Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006); *Rezac v. State*, 782 S.W.2d 869, 871 (Tex. Crim. App. 1990).

In the sole criminal case cited by the concurrence, the Court of Criminal Appeals reversed a conviction for fundamental error in the jury charge, not prosecutorial misconduct as the concurrence suggests. *See Carriera v. State*, 663 S.W.2d 1 (Tex. Crim. App. 1983). Neither appellant nor the concurrence cites a case in which a conviction was reversed for fundamental error related to jury argument. Questions of fundamental error are considered under the *Marin v. State* error-preservation framework. *Proenza*, 541 S.W.3d at 794 (citing *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993)). To say that error is "fundamental" is "functionally the same as saying that it is a *Marin* category-one or -two claim"— respectively, absolute requirements or waivable-only rights. *See id.* at 792, 794. Because error related to jury argument is forfeitable by a failure to object, such error is a *Marin* category-three claim and cannot be "fundamental." *See Cockrell*, 933 S.W.2d at 95 (Meyers, J., concurring) ("The majority concludes that the right to a trial free from improper jury argument falls within the third category of rights, those that must be insisted upon at trial or are not preserved for review.").

## III. CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's judgment.

/s/ Ken Wise
   Justice

Panel consists of Chief Justice Christopher and Justices Wise and Hassan. (Hassan, J., concurring).

Do Not Publish — Tex. R. App. P. 47.2(b).