**AFFIRMED and Opinion Filed May 24, 2022**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-19-01143-CR**

**APRIL MICHELLE FLOYD, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 1**
**Rockwall County, Texas**
**Trial Court Cause No. CR18-0971**

# MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Garcia
Opinion by Justice Reichek

Following a bench trial, April Michelle Floyd was convicted of misdemeanor driving while intoxicated. The trial court assessed punishment at sixty days in county jail and a $500 fine, suspended the jail sentence, and placed her on community supervision for twenty-one months. In her sole issue, appellant challenges the sufficiency of the evidence to support her conviction. We affirm.

## FACTUAL BACKGROUND

Rockwall police officer Cameron Parker was on patrol at about 12:30 a.m. on April 21, 2018 when he noticed a vehicle weaving in and out of its lane of traffic.

Parker said the vehicle nearly hit the median, was failing to maintain a consistent speed, and was braking at inappropriate times. Given the "inconsistent driving behavior," the time of night, and the location, which was in the area of a bar where he often saw intoxicated drivers at "around that time," Parker believed the driver of the vehicle was intoxicated and initiated a stop.

Parker approached the vehicle, which was being driven by appellant. He smelled the odor of alcohol, which followed her when she exited the vehicle, and he noticed appellant's eye makeup was smeared. Parker asked her if she had been drinking and, appellant said she had, ultimately acknowledging that she had one to two glasses of wine at a party and two mixed drinks at the nearby bar. She also told him she ate earlier in the evening. Over the course of the stop, appellant made several statements that Parker believed indicated appellant knew she was intoxicated. For example, she said she was "in trouble," "this is bad," was "upset" with herself, and was "worried" about the possibility of going to jail.

Parker decided to evaluate her by administering three standard field sobriety tests—the horizontal gaze nystagmus (HGN), the walk-and-turn, and the one-leg stand. The tests, he said, are validated and standardized by the National Highway Traffic Safety Administration (NHTSA). Their purpose is to detect whether a person is intoxicated, and the tests are scored on the basis of the various "clues" observed. Parker said he had performed more than 150 of these tests either in training or in the

field.  As he testified about the tests and appellant's performance on them, the State played a video recording of the scene.

Parker began with the HGN test.  At trial, he explained the test, how he administered it, and the particular clues he looked for in appellant.  Parker said he observed all six clues of intoxication in appellant's eyes.

Parker next attempted to administer the walk-and-turn test, which requires a person to walk heel to toe down a line with their arms down by their side, negotiate a turn, and walk back.  But, Parker said, appellant got in the starting position numerous times but then appeared to be off balance and had to "catch herself by stepping off to the side."  Parker said it took twenty-five to thirty minutes for appellant to start the test, which was the longest amount of time in his career.  During this time, appellant repeatedly asked for the instructions to perform the test, which he believed indicated a loss of her mental faculties.  She also told the officer she needed to urinate and thought that would impact her ability to perform the test.  Parker said there was no public restroom around and denied appellant's request to relieve herself behind the car.  Ultimately, appellant urinated on herself and, then, afterwards performed the test.  She also complained that her feet were cold, but Parker said it was appellant's decision to remove her shoes. Parker said he observed five of the eight clues, which, like the HGN test, indicated intoxication.  The final test was the one-leg stand, which had four clues.  Parker said appellant exhibited two of the clues, which was enough to indicate intoxication.

–3–

Parker testified that appellant said she had been drunk only once in her life. He said that, based on his training and experience, people who have less experience drinking have lower tolerance levels for alcohol. Parker said a lower tolerance level can affect a person's mental and physical capacities at lower quantities of alcohol than an experienced drinker.

Based on appellant's driving behavior, odor of alcohol, admission of drinking, and the results on the field sobriety tests, Parker arrested her. Appellant agreed to take an alcohol breath test, which was administered at the jail. She gave breath samples at 2:03 a.m. and 2:06 a.m., which showed readings of .076 and .075, respectively, both under the legal limit of .08.

On cross examination, Parker agreed that (1) although appellant weaved while driving, she got back into her lane, (2) she stopped at the red light, (3) she pulled over safely and properly once he initiated the stop, (4) she gave him her license when asked, and not a debit card or other item, and (5) she recalled specific details of her night. He also acknowledged that appellant's need to relieve herself could possibly affect the walk-and-turn test and agreed that it would have been embarrassing for appellant to have urinated in front of two male police officers. But he explained that had she performed the test when instructed, instead of causing a half-hour delay, she would have most likely been in a place where she could have relieved herself, whether that was jail or home. Moreover, he also acknowledged that she never refused to take the tests, but he said she "swayed," was "unsteady" on her feet." He

did not believe the "windy" weather affected her balance. As for the one-leg stand, he acknowledged appellant was standing barefoot in her urine while performing the test. Although the NHTSA manual requires the one-leg test to be performed on a dry, level, and non-slippery surface, Parker said he did not instruct appellant to step out of her urine. He also acknowledged that his partner had to "chime in" with the proper instructions when appellant failed to tell her to look at her toes and keep her foot parallel. When defense counsel asked if appellant spoke clearly that night in connection with the tests, Parker said she spoke with a "thick tongue."

In addition to Parker's testimony, the State offered the dash and body camera recordings of the stop, which generally corroborated Parker's testimony of the events that night. The recordings showed appellant's driving performance which led to the stop as well as appellant's demeanor at the scene and her performance on the field sobriety tests, and, in particular, the nearly thirty-minute delay in appellant starting the walk-and-turn test.

## DISCUSSION

In her sole issue, appellant complains that the evidence is insufficient to prove beyond a reasonable doubt that she was intoxicated.

In reviewing a challenge to the sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*

*v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). However, we must ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged. *Id.*

A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a); *Crouse v. State*, 441 S.W.3d 508, 513 (Tex. App.—Dallas 2014, no pet.). Intoxicated is defined as (1) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body or (2) having an alcohol concentration of 0.08 or more. *See* TEX. PENAL CODE ANN. § 49.01(2)(A)–(B); *Crouse*, 441 S.W.3d at 513. Thus, section 49.01(2) provides two alternative methods for the State to prove intoxication. These are referred to as the impairment theory (loss of normal use of physical or mental faculties) or the per se theory (alcohol concentration of .08 or more). *Crouse*, 441 S.W.3d at 513.

In this case, the complaint alleged both theories of intoxication, and appellant argues the evidence was insufficient under either theory. For purposes of our analysis, we focus on the impairment theory. Under this theory, appellant's complaint focuses on the field sobriety tests. She argues the tests were not administered in a manner consistent with the NHTSA manual and, as a result, are invalid, making them unreliable as proof of intoxication. To show these deviations, she directs us to the NHTSA manual, which is attached to her brief, and asks that we take judicial notice of it. Appellant did not offer the manual as evidence at trial nor did she ask the trial court to take judicial notice of it.

Initially, we note that slight variations in the administration of field sobriety tests do not render evidence inadmissible or unreliable but may affect the weight to be given the testimony. *See Williams v. State*, 525 S.W.3d 316, 324 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd); *Hartman v. State*, 198 S.W.3d 829, 839 (Tex. App.—Corpus Christie 2006, pet. stricken); *Compton v. State*, 120 S.W.3d 375, 378 (Tex. App.—Texarkana 2003, pet. ref'd). Even so, we need not decide whether to take judicial notice of the manual or whether Parker deviated from its instructions in administering the tests because, even if we exclude the field sobriety tests from our review, the remaining evidence is sufficient to support a finding of intoxication beyond a reasonable doubt.

Evidence of intoxication may include, among other things, erratic driving, unsteady balance, slurred speech, odor of alcohol from the vehicle, odor of alcohol

–7–

on the person, admission to recent alcohol consumption, inability to perform field sobriety tests or follow directions, and an officer's opinion testimony that the subject was intoxicated. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010); *Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985); *Zill v. State*, 355 S.W.3d 778, 785 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Garcia*, No. 13-18-00373-CR, 2020 WL 1858285, at *3 (Tex. App.—Corpus Christi–Edinburg Apr. 9, 2020, pet. ref'd) (mem. op.) (not designated for publication); *Petroski v. State*, No. 14-09-00153-CR, 2010 WL 772050, at *3 (Tex. App.—Houston [14th Dist.] Mar. 9, 2010, pet. dism'd) (mem. op.) (not designated for publication).

Here, the evidence showed appellant was driving erratically that night, weaving in and out of her lane, nearly striking a median, and slowing down and speeding up. When Parker stopped her, he smelled alcohol coming from the vehicle, and that smell followed appellant. She admitted that she had one to two glasses of wine earlier at a party and then two mixed drinks at the nearby bar. During the field sobriety tests, she struggled to understand the instructions and asked him to repeat them many times, an indication that she did not have normal use of her mental faculties. The walk-and-turn test, in particular, was delayed by thirty minutes as appellant unsuccessfully started the test numerous times, repeatedly asked for the instructions, and attempted to negotiate with the officer regarding her ability to do perform test. Appellant told the officers she was concerned she could not perform the test successfully because needed to urinate and ultimately she did urinate on

herself. Over the course of the stop, appellant became emotional and also made statements that she was "in trouble," "this is bad," and was worried about the possibility of going to jail, all of which suggested to Parker that she knew she was intoxicated. In addition, Parker said was unsteady and thick-tongued. Finally, there was evidence that appellant had only been drunk once in her life, and, as a less experienced drinker, her tolerance level would have been lower and would have affected her mental and physical faculties at lower quantities than an experienced drinker. Apart from Parker's testimony, the trial court had video recordings of the scene from which he could observe appellant.

Having reviewed the evidence, we conclude it is sufficient for the trial court to determine beyond a reasonable doubt that appellant had lost the normal use of her physical or mental faculties due to the introduction of alcohol into her body. Accordingly, the evidence is sufficient to support her conviction. We overrule the sole issue.

We affirm the trial court's judgment.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
191143F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

APRIL MICHELLE FLOYD,
Appellant

No. 05-19-01143-CR  V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at
Law No. 1, Rockwall County, Texas
Trial Court Cause No. CR18-0971.
Opinion delivered by Justice
Reichek; Justices Molberg and
Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered May 24, 2022