

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-25-00090-CR

———————————————————

BRIAN COLE, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Criminal Court No. 3
Denton County, Texas
Trial Court No. CR-2024-07218-C

---

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

Appellant Brian Cole, pro se, appeals his conviction for driving while intoxicated (DWI), enhanced by a prior DWI conviction. *See* Tex. Penal Code Ann. §§ 49.04, 49.09. Cole raises what we have organized into ten issues: (1) his speedy-trial rights were violated; (2) the State did not properly authenticate or prove the reliability of evidence concerning its blood-alcohol testing; (3) the trial court violated Cole's right to call witnesses; (4) the trial court failed to suppress certain evidence; (5) the trial court erroneously denied Cole's mid-trial motion for continuance; (6) he was denied a "non-bar counsel" in violation of the Sixth Amendment; (7) the trial court failed to consider the full range of punishment; (8) Cole's double-jeopardy rights were violated; (9) his due-process rights were violated by "the denial of post-judgment records and transcripts"; and (10) part of the reporter's record contains inaccurate footers. None of these issues have merit, so we will affirm.

## I. Background Facts and Procedural History

Bartonville Police Officer James Martin observed a stationary vehicle in the right turn lane of traffic, and he attempted to assist the driver by pulling behind him. As Officer Martin approached, the vehicle's driver accelerated, turned right without signaling, and ran over the curb. The officer turned on his emergency lights, and the vehicle stopped.

Although Officer Martin repeatedly asked the driver to identify himself and explained why he had stopped the vehicle, the driver refused to identify himself and

instead kept asking the officer to identify himself and to explain why he had been pulled over. The officer believed that the driver was intoxicated based on his red, glassy, and bloodshot eyes; his behavior, slurred speech, and thick tongue; and the smell of alcohol coming from the vehicle.

When another officer arrived, they persuaded the driver to get out of his vehicle. Eventually, they identified Cole as the driver. Cole refused field-sobriety testing, so Officer Martin obtained a blood-alcohol search warrant and took Cole to a hospital for a blood draw. Testing showed that Cole's blood-alcohol content was 0.202—more than twice the legal limit.

Throughout the trial proceedings, Cole represented himself. He admitted to drinking and estimated to having no "more than three to four beers" that night, but he also claimed that he had merely been a passenger and that the actual driver had fled into the woods. Upon hearing all the evidence, the jury found Cole guilty of driving while intoxicated with a blood-alcohol concentration of 0.15 or more. During the punishment phase, the jury found two enhancements were true and assessed a punishment of 335 days in county jail and a $3,350 fine. The trial court sentenced Cole accordingly. Cole, still proceeding pro se, has appealed.

## II. Speedy Trial

In his first issue, Cole asserts that the trial court denied his right to a speedy trial under the United States and Texas Constitutions by starting trial 516 days after

his arrest. *See* U.S. Const. Amend. VI; Tex. Const. art. I, § 10. Cole did not preserve this issue.

Speedy-trial complaints are subject to error-preservation requirements. *See Henson v. State*, 407 S.W.3d 764, 768–69 (Tex. Crim. App. 2013). To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). Further, the party must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013).

Here, we have found nothing in the record showing that Cole filed a pretrial speedy-trial motion, presented it to the trial court, requested a hearing on it, or obtained a ruling on it.[1] In his brief, Cole cites two times in the reporter's record— after trial had begun—to argue that he "asserted the right deliberately through continuance requests and delay complaints." But at neither time did Cole specifically

---

[1]Cole filed a number of sovereign-citizen-inspired documents in the trial court, challenging the court's jurisdiction over him and the authority of prosecutors and judges involved in his case. In several documents, he attempted to bring "criminal complaints" against various persons, including the trial-court judge, and in those documents, Cole quotes—among other constitutional provisions—the speedy-trial provision in the Sixth Amendment to the United States Constitution. Such complaints cannot be read as invoking Cole's speedy-trial rights in his own case. But even if they could, he did not request a pretrial hearing or obtain a ruling. *See* Tex. R. App. P. 33.1(a)(2).

4

raise a speedy-trial complaint. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) ("The point of error on appeal must comport with the objection made at trial."). In fact, Cole's request to delay his trial is wholly inconsistent with his complaint about the alleged denial of his speedy-trial rights. *See Henson*, 407 S.W.3d at 769 (stating the defendant "can either fail to insist upon a speedy trial and possibly reap benefits caused by delay, or [the defendant] can insist on a prompt trial, and if it is not granted, argue for a dismissal" but the defendant "may not do both").

Because Cole did not make a speedy-trial complaint before trial began, he has not preserved the issue for appeal.[2] *See* Tex. R. App. P. 33.1(a)(1); *Fletcher v. State*, No. 05-17-00750-CR, 2019 WL 1033865, at *3–4 (Tex. App.—Dallas Mar. 5, 2019, pet. ref'd) (mem. op., not designated for publication); *Quigley v. State*, No. 02-15-00441-CR, 2017 WL 930066, at *12 (Tex. App.—Fort Worth Mar. 9, 2017, no pet.) (mem. op., not designated for publication); *Grimaldo v. State*, 130 S.W.3d 450, 454 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.). We overrule Cole's first issue.

---

[2]Cole's new-trial motion raising a speedy-trial ground did not preserve error. *See Fragoso v. State*, No. 08-22-00182-CR, 2023 WL 4295855, at *2, *6 (Tex. App.—El Paso June 30, 2023, pet. ref'd) (mem. op., not designated for publication) (holding that speedy-trial complaint first raised in new-trial motion was not preserved).

## III. The Blood-Kit Evidence

In his second issue, Cole claims that the trial court abused its discretion by admitting blood-kit evidence in two respects.[3] First, he asserts that the trial court admitted evidence that was not properly authenticated, and second, he contends that the trial court admitted unreliable evidence under Rule 702. *See* Tex. R. Evid. 702. But in neither respect has he shown an abuse of discretion.

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.* If the trial court's evidentiary ruling is correct on any applicable theory of law, we will not disturb it even if the trial court

---

[3]Cole stated as a separate issue in his "Issues Presented" that he was challenging "[w]hether the trial court erred in failing to suppress defective blood evidence with lack of refrigeration, mismatched vials[,] and tubes that had been expired for three months." Although he did not separately brief this issue, because motions to suppress are simply a specialized objection to the admissibility of evidence, our appellate review of Cole's briefed second issue will encompass his unbriefed suppression issue covering the same complaints. *See Kuether v. State*, 523 S.W.3d 798, 807 n.10 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (citing *Porath v. State*, 148 S.W.3d 402, 413 (Tex. App.—Houston [14th Dist.] 2004, no pet.)).

gave the wrong reason for its correct ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Qualls v. State*, 547 S.W.3d 663, 675 (Tex. App.—Fort Worth 2018, pet. ref'd).

### B. Authentication

At trial, Cole challenged the State's chain of custody, objecting that the State could not establish that his blood was inside the State's blood-kit evidence. We conclude that the State authenticated its blood-kit evidence.

Texas Rule of Evidence 901 states, "to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what its proponent claims." Tex. R. Evid. 901(a). To properly admit blood-test results into evidence, the evidence's proponent must establish a proper chain of custody. *Astalas v. State*, No. 2-02-237-CR, 2004 WL 2320362, at *3 (Tex. App.—Fort Worth Oct. 14, 2004, no pet.) (per curiam) (mem. op., not designated for publication); *Durrett v. State*, 36 S.W.3d 205, 208 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

Absent any showing of evidence's tampering or alteration, proof of the beginning and end of the chain of custody will support its admission. *Astalas*, 2004 WL 2320362, at *3. Any gaps in the chain of custody go to the weight of the evidence, not to its admissibility. *McGregor v. State*, 394 S.W.3d 90, 125 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); *Patel v. State*, No. 2-08-032-CR,

2009 WL 1425219, at *2 (Tex. App.—Fort Worth May 21, 2009, no pet.) (mem. op.,

not designated for publication). As this court stated in *Williams v. State*,

> Authentication or identification may be determined by different
> methods, including testimony from a witness with knowledge that "a
> matter is what it is claimed to be." Tex. R. Evid. 901(b)(1). A court will
> not abuse its discretion by admitting evidence based on a belief that a
> reasonable juror could find that the evidence has been authenticated or
> identified properly.

No. 2-06-416-CR, 2008 WL 1867979, at *9 (Tex. App.—Fort Worth Apr. 24, 2008,

pet. ref'd) (not designated for publication) (internal case citations omitted).

On the chain of custody, the State presented testimony from the arresting

officer, a DPS forensic scientist, and another officer who brought the blood-kit

evidence from the police locker room to trial. The arresting officer testified that he

observed Cole's blood draw, the blood vials were sealed and labeled with identifying

information, and the evidence was placed in the department's storage room. The

officer said he notified his supervisor, who was responsible for sending the evidence

to the DPS crime lab, and it was sent to the DPS by "USPS."

The DPS scientist confirmed that the DPS's Garland lab initially received

Cole's blood-kit evidence and sent it to its Houston lab. The scientist took the

blood-kit evidence out of a secured vault and analyzed it. He showed the jury where

he had placed his initials on a tested vial and where he had written the dates when he

had opened and sealed that vial. He also explained that the other vial remained sealed

because it was not tested. The scientist explained his procedures to ensure that Cole's

8

blood samples were not mixed up with other samples, and he testified that the DPS returned the evidence to the Bartonville Police Department.[4]

Another Bartonville police officer testified that he had taken the blood-kit evidence out of the department's secured storage area and had brought it to trial. The box containing the evidence was sealed and contained identifying information of anyone who had taken custody or control over the sealed box. As the officer broke the box's seal and opened it in court, he showed the jury that the box contained two vials of blood listing Cole's name and containing signatures and dates. In sum, through these three witnesses, the State showed the beginning through the end of the blood-kit evidence's chain of custody. *See Stature v. State*, No. 02-23-00304-CR, 2024 WL 3458078, at *5 (Tex. App.—Fort Worth July 18, 2024, pet. ref'd) (mem. op., not designated for publication).

Cole argues that the blood-kit evidence "was drawn [on] October 1, 2023[, . . . ] placed in expired vials, [and] shipped [via] USPS without tracking or refrigeration, arriving October 5, then tested in Houston." He complains that the evidence was tainted because of expired vials and the lack of refrigeration during transport.

---

[4]Cole argues that he "objected to mismatches (green vs. gray tops)," but when he questioned the DPS scientist about the color of the vial tops, the scientist stated that "the green is in reference to the conical vials. The conical vials are the containers that hold the gray top tubes." So the trial court could have reasonably believed from Cole's clarifying cross-examination that a reasonable juror could find that both colored tops were used and that no "mismatch" existed. *See Williams*, 2008 WL 1867979, at *9.

9

But the DPS scientist explained that blood-chemistry testing can be performed on samples that have been stored at room temperature. And as for Cole's expiration attack, the scientist testified that the blood sample appeared normal and was in a testable condition. He further stated that the vacuum seal was still intact even though it was expired and that he had no concerns about the seal's being broken. When asked about possible fermentation, the scientist explained why he did not have any fermentation concerns when testing Cole's blood. And in summing up his testimony, the scientist testified—as he had stated in his report—that the 0.202 blood-alcohol-concentration result he obtained from testing Cole's blood was accurate.

Cole did not object to tampering, altering, or commingling the blood-kit evidence, and his expiration and temperature complaints go to the weight of the evidence to be assigned by the jury and not its admissibility. *See Qualls*, 547 S.W.3d at 680; *Williams v. State*, 525 S.W.3d 316, 322 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). We thus conclude that the trial court could have believed that a reasonable juror could find that the State's three witnesses had authenticated and properly identified the blood-kit evidence as containing Cole's blood. *See Williams*, 2008 WL 1867979, at *9. Accordingly, the trial court did not abuse its discretion by admitting the blood-kit evidence over Cole's chain-of-custody objections. *See id.* at *11.

**C. Reliability**

Cole also attempts to tie his expiration and refrigeration complaints to whether the evidence was reliable under Texas Rule of Evidence 702 and *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992). Scientific evidence must be both reliable and relevant to assist a jury to reach a conclusion in a case. Tex. R. Evid. 401, 702; *Kelly*, 824 S.W.2d at 572–73. The proponent of scientific evidence can meet its burden of establishing reliability "by showing that: (1) the underlying scientific theory is valid; (2) the technique applying the theory is valid; and (3) the technique was properly applied on the occasion in question." *Somers v. State*, 368 S.W.3d 528, 536 (Tex. Crim. App. 2012) (citing *Kelly*, 824 S.W.2d at 573).

Here, the DPS scientist testified that he tested Cole's blood-alcohol concentration using headspace gas chromatography, but Cole did not challenge this testing method. Rather, Cole complained about the expiration of the blood-collection vials and "fermentation risks" from the lack of transportation refrigeration. But as we explained above, the scientist testified about both of these issues, refuting Cole's theories that his blood had been compromised or had caused unreliable test results. *See Yanez v. State*, No. 07-23-00161-CR, 2024 WL 1814058, at *5 (Tex. App.—Amarillo Apr. 25, 2024, no pet.) (mem. op., not designated for publication); *Williams*, 525 S.W.3d at 322. Because the scientist's testimony met the State's burden to show the reliability of the examined blood-test specimen, the trial court did not abuse its

discretion by admitting the blood-kit evidence. *See Yanez*, 2024 WL 1814058, at *5. Accordingly, we overrule Cole's second issue.

## IV. The Right to Call Witnesses

In his third issue, Cole complains that the trial court "violated [his] Sixth Amendment right to compulsory process by denying defense witnesses." Cole specifically argues that he sought to call "Officer Housmans[5] and others[] but was denied as irrelevant or tainted." This issue is without merit.

The Constitution guarantees a criminal defendant a meaningful opportunity to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986). The Compulsory Process Clause preserves the right of a defendant in a criminal trial to compulsory process for obtaining favorable witnesses. *Coleman v. State*, 966 S.W.2d 525, 527–28 (Tex. Crim. App. 1998) ("The Sixth Amendment right to compulsory process 'is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.'" (quoting *Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 1923 (1967))). "In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049 (1973).

---

[5]Officer Housmans responded to help Officer Martin arrest Cole.

During a pretrial hearing, the trial court informed Cole of his right to call and subpoena witnesses, telling him "to file the appropriate motion to subpoena those witnesses." Cole indicated that he intended to call Officer Martin and Officer Housmans. The State indicated that it intended to only call Officer Martin, but the trial court still instructed the State to "route [Officer Housmans] for trial."

Both witnesses testified at trial, and Cole cross-examined Officer Martin. The State questioned Officer Housmans, and Cole could have cross-examined her. Instead, Cole said he intended to "call her on direct." But moments later, he rested and closed his case. So Cole was not denied the opportunity to question either of the two arresting officers.[6]

As far as being denied the opportunity to call "others," Cole does not indicate who the other witnesses were. But in his reply brief, he clarifies that he should have been able to call "THE STATE OF TEXAS" and Lucero Ramirez.[7] Cole has not shown error as to either witness.

First, Cole complains about not being able to call "THE STATE OF TEXAS." But Cole cites no rule, statute, or other provision enabling him to essentially call a

_____

[6]Cole also generally complains about "tainted" testimony and argues about the officers simultaneously being in the courtroom to hear each other's testimony, but his tainted-evidence complaint is not preserved because Cole had not invoked the Rule. *See* Tex. R. Evid. 614.

[7]Ramirez worked in the Denton County Community Supervision Department.

representative of the State of Texas instead of naming a specific individual. Thus, the trial court did not err in denying Cole's request to call "THE STATE OF TEXAS."

Second, Cole complains about not being able to call Ramirez. When Cole attempted to call Ramirez, Cole confirmed that Ramirez was not present at his arrest, but he claimed that "she does have a vested interest." The trial court questioned the relevance of Ramirez's testimony at the guilt–innocence phase, and instead of answering the trial court's relevance inquiry, Cole stated, "I'll pass at this time and wait for punishment phase." The record thus does not show that the trial court denied Cole the right to question Ramirez during the guilt–innocence phase; rather, he chose not to call her and cannot complain on appeal that he was denied the right to call her during the guilt–innocence phase.

Cole again tried to call Ramirez during the punishment phase, but he had not subpoenaed her, and she was not present. Cole twice asked for time to subpoena Ramirez, and the trial court denied his requests and stated, "We have already announced ready for trial. . . . We are at trial. You did not effect your subpoena before trial started. We are proceeding forward."

We review a trial court's ruling on a motion for continuance for an abuse of discretion. *Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002). After a trial has begun, the trial court may grant a continuance when, by some unexpected occurrence that could not reasonably have been anticipated, the applicant is so taken by surprise that a fair trial cannot be had. Tex. Code Crim. Proc. Ann. art. 29.13.

14

Here, the record reveals that Cole was not surprised by the need for a subpoena and lacked diligence in attempting to secure Ramirez's attendance. The trial court had warned Cole two weeks before trial started of the need to subpoena witnesses. Cole failed to subpoena Ramirez—even after he had decided in the guilt–innocence phase that he wanted to call her as a punishment witness. Rather, Cole waited until the middle of the punishment phase of his jury trial to ask for time to subpoena additional witnesses, and the trial court—quite understandably—was unwilling to delay the proceedings. Cole was then still able to call three witnesses and to testify on his own behalf.

Under these circumstances, Cole has not shown an abuse of discretion in denying his request for time to subpoena Ramirez. *See Gonzales v. State*, 304 S.W.3d 838, 843–44 (Tex. Crim. App. 2010) (holding that trial court did not abuse discretion by denying motion to continue because the motion did not state the defendant's diligence in seeking to secure the witness); *Campbell v. State*, 551 S.W.3d 371, 380 (Tex. App.—Houston [14th Dist.] 2018, no pet.). We overrule Cole's third issue.

## V. Suppression of Evidence

In his fourth issue, Cole asserts that the trial court erred by failing to suppress evidence obtained under an invalid warrant. To have preserved this complaint for our review, Cole must have presented to the trial court a timely request, objection, or motion stating the specific grounds, if not apparent from the context, for his desired ruling. *See* Tex. R. App. P. 33.1(a)(1); *Thomas*, 505 S.W.3d at 924. Because Cole never

15

objected to Officer Martin's testimony regarding the blood-draw search warrant and did not object to the blood-kit evidence based on the warrant's alleged invalidity, he failed to preserve his fourth issue for our review.[8] *See* Tex. R. App. P. 33.1(a)(1); *Thomas*, 505 S.W.3d at 924. We overrule Cole's fourth issue.

## VI. Motion for Continuance

Cole complains in his fifth issue that the trial court abused its discretion by denying his mid-trial motion for continuance. It did not.

As we stated above, we review a trial court's mid-trial continuance ruling for an abuse of discretion, *see Vasquez*, 67 S.W.3d at 240, and Article 29.13 governs, *see* Tex. Code Crim. Proc. Ann. art. 29.13. Among other things, an applicant must demonstrate an unexpected occurrence that he could not have reasonably anticipated, that he was so taken by surprise that a fair trial cannot be had, and prejudice. *See* Tex. Code Crim. Proc. Ann. art. 29.13; *Dotson v. State*, 146 S.W.3d 285, 297 (Tex. App.— Fort Worth 2004, pet. ref'd).

---

[8]In his brief, Cole claims that he objected to the warrant's validity, but none of the cited portions of the record contain the warrant-validity objections he is trying to raise for the first time on appeal. Rather, in one record location, Cole questioned a witness about the search-warrant affidavit, and in another, he attempted to testify about it but was stopped because the document was not in evidence. But in neither of these record locations did Cole make a legal objection and obtain a ruling. *See* Tex. R. App. P. 33.1(a)(1); *Thomas*, 505 S.W.3d at 924. In addition, Cole's closing argument complaining about alleged warrant defects—after the evidence was closed—was not a legal objection and came too late.

In support of his denied-continuance issue, Cole cites his request for a continuance on day two of his trial—after the jury had found him guilty. It was a Friday afternoon, and Cole wanted additional time to look at the record and evidence to prepare for the punishment phase. The trial court stated that the proceedings would begin at 1:00 pm on the following Monday and denied his request to delay the proceedings beyond that time. Cole made no further argument, and when the punishment phase resumed as scheduled, when asked whether he was ready, Cole responded: "Yes, sir. I'm the registered agent of the fictitious name being unlawfully detained, here on special appearance, Brian Jacob Cole, all caps, fictitious name." But Cole did not assert that (1) he had not had sufficient time to prepare, (2) anything unexpected had occurred that he had not reasonably anticipated, (3) he had been unfairly surprised, or (4) he would be prejudiced in continuing the punishment phase.

Because Cole failed to satisfy Article 29.13's requirements for a mid-trial continuance, the trial court did not abuse its discretion by denying Cole's request. *See* Tex. Code Crim. Proc. Ann. art. 29.13; *Dotson*, 146 S.W.3d at 297. We overrule Cole's fifth issue.

## VII. "Non-Bar Counsel"

In his sixth issue, Cole contends that the trial court abused its discretion by denying his request for "non-bar counsel"—Darren Swain, who was not a licensed attorney—in violation of the Sixth Amendment and Section 38.123 of the Texas Penal Code. It did not.

17

A layperson has a right to self-representation, *see Faretta v. California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 2533 (1975); *Burton v. State*, 634 S.W.2d 692, 694 (Tex. Crim. App. 1982), but such a person does not have a right to representation by an unlicensed layperson, *see, e.g.*, Tex. Gov't Code Ann. § 81.102 (regulating who may practice law in Texas); *Johnson v. State*, No. 03-99-00159-CR, 1999 WL 1072604, at *2 (Tex. App.—Austin Nov. 30, 1999, no pet.) (not designated for publication); *Ex parte Brown*, No. 05-92-02785-CR, 1993 WL 96400, at *2 (Tex. App.—Dallas Mar. 30, 1993, no writ) (per curiam) (not designated for publication); *Baldwin v. State*, 756 S.W.2d 91, 93 (Tex. App.—San Antonio 1988, pet. ref'd); *see also Swain v. Dobbs*, 692 S.W.3d 720, 732 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.) (holding that trial court did not err in prohibiting Darren Swain from practicing law as a non-attorney representative of a pro se litigant).[9] And Section 38.123 of the Texas Penal Code does not provide otherwise. *See* Tex. Penal Code Ann. § 38.123 (providing when a person commits the offense of the unauthorized practice of law).

We conclude that the trial court did not err by denying Cole's request for an unlicensed person to represent him during trial. We overrule his sixth issue.

---

[9] *See also Turner v. Am. Bar Ass'n*, 407 F. Supp. 451, 476–77 (N.D. Tex. 1975) ("From the foregoing analysis of the history of the practice of law, both in England and in the United States, this [c]ourt concludes that there is insubstantial historical support for the Plaintiffs' contention that they have a right to have an unlicensed layman assist them under the guise of the Sixth Amendment."), *aff'd sub nom. Taylor v. Montgomery*, 539 F.2d 715 (7th Cir. 1976), & *aff'd sub nom. Pilla v. Am. Bar Ass'n*, 542 F.2d 56 (8th Cir. 1976).

## VIII. Punishment

In his seventh issue, Cole complains that his due-process rights were violated because the trial court failed to consider the full range of punishment, including community supervision. Cole's rights were not so violated.

A defendant has the right to have a jury assess his punishment, *see* Tex. Code Crim. Proc. Ann. art 37.07, § 2(b), and jury-recommended community supervision is governed by Code of Criminal Procedure Article 42A.055. *See* Tex. Code Crim. Proc. Ann. art. 42A.055; *Garrett v. State*, No. 02-25-00049-CR, 2025 WL 3039150, at *4 (Tex. App.—Fort Worth Oct. 30, 2025, pet. filed) (mem. op., not designated for publication). "For a defendant to be entitled to submission to a jury of a question on the issue of community supervision, he must . . . file a written sworn motion for community supervision, and the evidence must support his eligibility for community supervision." *Garrett*, 2025 WL 3039150, at *5 (citing Tex. Code Crim. Proc. Ann. art. 42A.055(b)). Generally, the trial court has no power to alter a lawful jury verdict. *Ette v. State*, 559 S.W.3d 511, 515 (Tex. Crim. App. 2018).

Here, despite Cole's failing to file an Article 42A.055 motion, during voir dire, the trial court allowed Cole to orally testify that he had never been convicted of a felony—to satisfy the statute—and then it instructed the jury (1) of Cole's application under oath swearing to his lack of a felony conviction, and (2) that if they found Cole had never been convicted of a felony, they could recommend community supervision.

19

The punishment charge contained alternating forms to enable the jury to recommend community supervision, which it did not do.

Absent evidence indicating otherwise, we presume the jurors followed the trial court's instructions and considered the full range of punishment. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009) (stating that "we generally presume that a jury will follow the judge's instructions"). And here there is no such evidence. Accordingly, Cole has not shown that his due-process rights were violated by the alleged failure to consider the full punishment range. We overrule his seventh issue.

## IX. Double Jeopardy

In his eighth issue, Cole argues that the trial court erred by "allowing enhancement from an invalid prior misdemeanor," which violated his double-jeopardy rights. Not so.

The State alleged two enhancements to increase Cole's minimum applicable jail sentence—a prior DWI conviction and a prior conviction for interfering with an emergency call.[10] Cole moved to strike the enhancements on double-jeopardy

---

[10]Although Cole pleaded "not true" to both prior convictions, he acknowledged in his testimony that he was convicted of the offenses and served probation for the DWI. The jury found both allegations "TRUE," which raised Cole's minimum jail sentence to 90 days. He complains on appeal that the enhancements were based on invalid and fake indictments. But he did not make these specific objections in the trial court—and his closing argument raising alleged "flaws" was not a timely objection—so he has not preserved them for our review. *See Rosas v. State*, No. 02-24-00318-CR, 2025 WL 2370588, at *4 (Tex. App.—Fort Worth Aug. 14, 2025, pet. ref'd) (mem. op., not designated for publication) (citing *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009)).

grounds, and the trial court denied the motion. But the State's use of Cole's prior convictions for enhancement did not violate his double-jeopardy rights. *See Monge v. California*, 524 U.S. 721, 728, 118 S. Ct. 2246, 2250 (1998); *Cherry v. State*, 447 S.W.2d 154, 157–58 (Tex. Crim. App. 1969); *Bailey v. State*, No. 03-09-00276-CR, 2010 WL 2428085, at *6 (Tex. App.—Austin June 18, 2010, pet. ref'd) (mem. op., not designated for publication) ("Because the current prosecution penalizes only the new DWI offense, it does not constitute double jeopardy with respect to the prior offenses being used for enhancement."). We thus overrule his eighth issue.

## X. The Record

In his final two issues, Cole complains about the appellate record.

We first consider his tenth issue, in which he complains that the ninth and tenth volumes of the reporter's record are defective because they identify the wrong court in each volume's footer. Cole maintains that this court should abate his appeal so that the court reporter can identify the correct court in the footer: County Criminal Court No. 3, Denton County, Texas. But aside from pointing out this error, he does not explain how the footer-misidentification issue impacts his appeal, and he does not point to any other record inaccuracies.

The State agrees that Cole's trial was conducted in County Criminal Court No. 3—which is correctly stated on the first page of every reporter's record volume— and it further agrees that the volume nine and ten footers should name that court. We thus conclude that (1) the parties agree on what the footers should say, (2) the

21

inaccurate footers do not harm Cole, (3) they have no impact on our resolution of his issues, and (4) the agreed-upon footer inaccuracies do not require us to abate the appeal for court-reporter recertification. *See* Tex. R. App. P. 34.6(e)(1), (3) ("If the dispute arises after the reporter's record has been filed in the appellate court, that court *may* submit the dispute to the trial court for resolution.") (emphasis added); *see also Barnes v. State*, No. 12-22-00077-CR, 2023 WL 2766095, at *7 (Tex. App.—Tyler Mar. 31, 2023, no pet.) (mem. op., not designated for publication) ("Appellant has not shown that the errors are significant, necessary to the appeal's resolution, or that she was harmed by any of the inaccuracies in the record."). We overrule Cole's tenth issue.

Finally, in his ninth issue, Cole complains that he did not receive the clerk's record or transcripts, denying his due-process rights to present this appeal. We observe that Cole has cited the reporter's record throughout his briefing and cited the clerk's record in his reply brief. In a letter to the trial court, he admitted to having access to the "transcripts" three times a week in the Denton County Jail's law library. Additionally, we have confirmed that the trial-court clerk has provided a copy of the clerk's record to Cole. Notably, Cole has not argued that he was prevented from making any specific appellate argument through his access to the record through the jail's law library or otherwise, and he has briefed numerous appellate issues—none of which we have overruled because of any briefing deficiency in failing to cite the

record.[11] Accordingly, because nothing demonstrates that Cole has been denied access to the appellate record or that his manner of accessing the record prevented him from presenting his appellate issues, we overrule Cole's ninth issue.

## XI. Conclusion

Having overruled Cole's ten issues, we affirm the trial court's judgment of conviction and sentence.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 15, 2026

---

[11]Cole also argues that this court should not dismiss this appeal based on his brief's timeliness, but we have accepted his brief as being timely filed and do not base our disposition on his brief's timeliness.